**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

FOX ROTHSCHILD LLP
75 Eisenhower Parkway, Suite 200
Roseland, NJ 07068
Telephone:  (973) 992-4800
Fax:  (973) 992-9125
Michael R. Herz (MH-5889)
Attorneys for Catherine E.  Youngman
Chapter 7 Trustee

| | |
|---|---|
| In Re:<br><br>JOSEPH S. RACCUIA,<br><br>      Debtor. | Chapter 7<br><br>Case No. 16-12781-MBK<br><br>Judge:  Hon. Michael B. Kaplan |
| CATHERINE E. YOUNGMAN, Chapter 7 Trustee,<br><br>      Plaintiff,<br>v.<br><br>JOSEPH S. RACCUIA,<br><br>      Defendant. | Adv. Pro. No. 16- |

## VERIFIED AMENDED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE

Catherine E. Youngman, the chapter 7 trustee (the "Trustee" or "Plaintiff") for Joseph S. Raccuia (the "Debtor" or "Defendant"), through her attorneys, Fox Rothschild LLP, for her verified adversary complaint against the Debtor, alleges the following:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

2.      This adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. § 157(b)(2).

3.      Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4.      The statutory predicate for the relief sought herein is 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5), as well as state common law.

## PROCEDURAL BACKGROUND AND PARTIES

5.      On February 17, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

6.      In his petition, the Debtor listed his residence as 224 Sunnyside Road, Lincroft, New Jersey 07738-1109 (the "Residence").

7.      On February 18, 2016, the Office of the United States Trustee appointed the Plaintiff as the chapter 7 trustee for the Debtor's bankruptcy estate.

8.      The Debtor's meeting of creditors pursuant to 11 U.S.C. § 341(a) was held on March 14, 2016.

9.      The deadline to file a complaint objecting to the Debtor's discharge was originally May 13, 2016, but through a series of orders, including most recently a consent order entered on October 11, 2016 [bankruptcy docket no. 41], the deadline has been extended to December 10, 2016.

10.     On or about June 2, 2016, the Trustee's counsel served the Debtor with a subpoena (the "Rule 2004 Subpoena") pursuant to Federal Rule of Bankruptcy Procedure 2004,

requesting production of certain documents by June 23, 2016, and scheduling an examination of

the Debtor for July 7, 2016.  A copy of the Rule 2004 Subpoena is attached as Exhibit A.

11.    An examination of the Debtor pursuant to Federal Rule of Bankruptcy Procedure

2004 was conducted on September 13, 2016 (the "Rule 2004 Exam").  Relevant excerpts of the

transcript for the Rule 2004 Exam are attached as Exhibit B.

12.    As set forth below, the Debtor, despite ample opportunity, has failed to fully

disclose and account for various assets and the diminishment of assets.

## FACTS AND ALLEGATIONS COMMON TO ALL COUNTS

**A.    Disclosures in Debtor's Petition**

13.    In Schedule B of his petition as filed on the Petition Date, the Debtor disclosed

the following assets:

a.    Personal and household items valued at $3,000.00, including household

goods and furnishings valued at $1,000.00.

b.    A 100% interest in an entity known as Office of Hepatobiliary and Tumor

Surgery PC ("H&T"), valued at $0.

c.    An interest in the estate of his late father, worth an unknown amount, and

any inheritance from which is stated to go to the Debtor's former spouse under a

divorce settlement.

Copies of Schedules B, C, I, and J of the Debtor's petition as filed on the Petition Date are

attached as Exhibit C.

14.    The Debtor did not claim an exemption in his interest in H&T in his petition as

filed on the Petition Date.  *See* Exhibit C at Schedule C.

15.     In Schedule I of his petition as filed on the Petition Date, the Debtor listed his occupation as "surgeon" and stated his average monthly income as $83,900.00.  *See* Exhibit C at Schedule I.

16.     In Schedule J of his petition as filed on the Petition Date, the Debtor listed monthly expenses totaling $45,598.00, resulting in net monthly income of $38,302.00.  *See* Exhibit C at Schedule J.

17.     On October 3, 2016, the Debtor amended Schedules I and J of his petition to state his average monthly income as $51,400.00, and his average monthly expenses as $52,639.00, resulting in net monthly income of -$1,239.00 [bankruptcy docket no. 31].  Copies of amended Schedules I and J of the Debtor's petition are attached as Exhibit D.

18.     The Debtor's average monthly income listed in his amended schedules is approximately $32,500.00 less than the average monthly income listed in his original schedules, and the Debtor has not provided any explanation for the dramatic reduction in income or how either the original or amended figures were calculated.

19.     On October 6, 2016, the Debtor amended Schedule B of his petition to value his interest in H&T at $100.00 [bankruptcy docket no. 36].  A copy of amended Schedule B of the Debtor's is attached as Exhibit E.

20.     On October 21, 2016, the Debtor amended Schedule C of his petition to claim an exemption in the recently amended $100.00 value of his interest in H&T [bankruptcy docket no. 47].

21.     Schedule E of the Debtor's petition lists at least $1,903,186.00 in priority unsecured claims, while Schedule F of the Debtor's petition lists at least $879,167.00 in general unsecured claims [bankruptcy docket no. 1].

**B.    H&T's Receivables**

22.    Upon information and belief, the Debtor began operating H&T, a medical practice specializing in liver and pancreatic surgery, in 1996.

23.    The Debtor testified at the Rule 2004 Exam that H&T ceased operating in October 2014.  *See* Exhibit B at 11:4-7, 40:11-21, 115:11-24, and 116:5-6.

24.    On or about May 20, 2011, the Debtor, on behalf of H&T, executed a promissory note in favor of Gordian Assets Inc. ("Gordian") in the principal amount of $225,000.00.

25.    Upon information and belief, pursuant to a UCC Financing Statement filed with the State of New York on July 13, 2011, and amended on or about May 12, 2016, Gordian has a perfected security interest in "any and all fixtures, equipment, accounts receivable, articles of personal property or other property utilized connection with the operation and maintenance of business at [H&T]."   Copies of Gordian's UCC Financing Statement and amendment are attached as Exhibit F.

26.    The Rule 2004 Subpoena included a request for documents pertaining to any accounts receivable owed to any business entity in which the Debtor has an interest.  *See* Exhibit A.

27.    The Debtor produced documents (the "Rule 2004 Responses") in response to the Rule 2004 Subpoena during the week of July 15, 2016.

28.    The Rule 2004 Responses included an accounting for receivables collected since the Petition Date for the Debtor's new medical practice, Joseph S. Raccuia, M.D., P.C. ("JSR"), which started operating in late 2015, but did not include any accountings with respect to accounts receivable due or paid to H&T.

29.     In the weeks following the production of the Rule 2004 Responses, the Trustee's counsel made multiple requests by phone and email to the Debtor's counsel for more detailed accountings with respect to H&T's and JSR's accounts receivable.

30.     At the Rule 2004 Exam, the Debtor explained that books and records both personally and for his businesses were kept by his accountant, Angelo Natoli, and that billing for H&T and JSR was done by an entity owned by Angelo Natoli called MedPro Systems, Inc. ("MedPro").  *See* Exhibit B at 42:1-3 and 48:4-15.

31.     The Debtor testified at the Rule 2004 Exam that he did not recall the last time he received any receivables due to H&T, that on the Petition Date he had no income other than from JSR, and that he did not anticipate any income for H&T during 2016 other than "dribs and drabs."  *See* Exhibit B at 50:13-16, 83:3-17, and 97:15-21.

32.     The Debtor further testified at the Rule 2004 Exam that he hoped to get an accounting for H&T's receivables "before we leave today" and "very soon."  *See* Exhibit B at 49:2-5 and 50:23-51:2.

33.     Despite repeated requests after the Rule 2004 Exam, no further information with respect to the accounts receivables for H&T and JSR were produced until September 27, 2016.

34.     The materials produced on September 27, 2016 included spreadsheets indicating that accounts receivable due to H&T totaling at least $152,887.04 was collected since the Petition Date, and of that amount, at least $114,100.00 was deposited into a personal checking account at Chase belonging to the Debtor.  Copies of the spreadsheets are attached as Exhibits G and H, respectively.

35.     On October 4, 2016, the Trustee's counsel sent a letter to the Debtor's counsel requesting, among other things, that. "(1) that the debtor immediately cease use of any

receivables paid to H&T; (2) that the Debtor provide a complete and detailed accounting for the disposition of the receivables paid to H&T and all distributions the Debtor received therefrom since the Petition Date…"  Follow-up requests of similar nature were made by letters dated October 18, 2016 and October 25, 2016, and emails dated October 27, 2016, November 3, 2016, November 8, 2016, November 14, 2016, November 18, 2016.  Copies of the letters and emails referenced in this paragraph, the latter of which also includes email requests to Debtor's counsel from counsel for Gordian as well as responses from Debtor's counsel, are attached as Exhibit I.

36.     Despite the repeated requests set forth in the previous paragraph, the Debtor has provided only limited additional information, has not responded to the request that he cease use of H&T's receivables, and the actual amount of receivables due to H&T on the Petition Date, the amount paid since January 1, 2015, and the disposition for amounts paid since January 1, 2015, a period including nearly ten (10) post-petition months, remains unaccounted for.

37.     It is unclear how the Debtor arrived at the $0 and $100.00 valuations of H&T stated in his original and amended Schedule B.

38.     The Debtor's testimony at the Rule 2004 Exam that he has received little to no income from H&T since the Petition Date, is contradicted by the fact that at least $152,887.04 in receivables due to H&T has been paid since the Petition Date and of that amount, at least $114,100.00 has been deposited in the Debtor's checking account.

39.     Similarly, the $152,887.04 paid on account of receivables due to H&T since the Petition Date strongly indicates that the valuations for H&T stated in the Debtor's original and amended Schedule B, of $0 and $100.00, respectively, are likely dramatically low and in discord with reality, particularly given that H&T should have little to no operating expenses since it ceased operating in October 2014.

40.     The Debtor's misrepresentation of the value of H&T's receivables in his petition and at the Rule 2004 Exam, and his persistent failure to fully account for the receivables and the disposition of paid receivables, has significantly impeded the Trustee's ability to investigate the Debtor's financial affairs and recover assets for the estate, including maximizing the estate's interest in H&T.

41.     Statements for H&T's checking account at Chase ending in 5241 for the months immediately preceding the Petition Date, a period that was more than a year after H&T ceased operating, reflect that the account was used for numerous purchases that appear to be personal in nature, including for food, entertainment, and transportation.  Statements for account 5241 for the three months prior to the Petition Date are attached as Exhibit J.

42.     When asked about some of the transactions referenced in the previous paragraph at the Rule 2004 Exam, the Debtor explained that they were business expenses, and when pressed on how such expenses could be incurred while H&T was not operating, The Debtor consistently characterized them as "accounting question(s)" for his accountant.  *See* Exhibit B at 143:4-145:16.

**C.     Marital Assets and Separation Agreement**

43.     The Debtor was divorced from his wife, Christina Raccuia, by a Judgment of Divorce entered on or about October 7, 2015.

44.     Previously, the Debtor and Christina Raccuia entered into a separation agreement (the "Separation Agreement") in January 2015, which, among other things, provided that:  (i) the Debtor convey his interest in the residence to Christina Raccuia; (ii) all furniture and household furnishings located in the Residence shall be the exclusive property of the Debtor; (iii) all net proceeds from the sale of the marital residence located at 113 Bedford Street, New York, NY

("113 Bedford"), be paid to Christina Raccuia; (iv) all furniture and household furnishing located in 113 Bedford shall be the exclusive property of Christina Raccuia; and (v) all inheritance due to the Debtor from his late father be given to Christina Raccuia. A copy of the Separation Agreement is attached as Exhibit K.

45.    A 2015 homeowners' insurance policy for the Residence values the property at $1,721,000, and values the contents of the property at $794,000.00. Copies of the coverage summary pages for insurance policy are attached as Exhibit L.

46.    In Schedule B of his petition, the Debtor valued his household goods and furnishings at $1,000.00 and all household items at $3,000.00, which is notable given that the contents of the Residence, where the Debtor purports to reside, were made property of the Debtor under the Settlement Agreement and were valued at $794,000.00 in the 2015 insurance policy for the property. *See* Exhibit C at Schedule B.

47.    To date, the Debtor has failed to explain the sizeable disparity between the valuation ascribed to the contents of Residence in the 2015 insurance policy and the value stated in his petition.

48.    113 Bedford was sold on or about June 5, 2015 for $5,300,000.00, with net proceeds totaling $132,873.84. A copy of the HUD-1 for the sale is attached as Exhibit M.

49.    A 2013 homeowners' insurance policy for 113 Bedford also includes coverage for jewelry and fine arts, and valued the contents of the home at $559,024.00. Copies of the coverage summary pages for insurance policy are attached as Exhibit N.

50.    An accounting provided by the Debtor with the Debtor's September 27, 2016 responses indicates that since May 29, 2015, at least $187,149.20 has been paid to Christina Raccuia from the estate of the Debtor's father, though it remains unclear if the Debtor received

any inheritance from his father's estate prior to that date.  A copy of the accounting is attached as Exhibit O.

51.     At the Rule 2004 Exam, the Debtor testified that his bankruptcy was at least in part due to having to paying Christina Raccuia's bills, instead of paying his own creditors, including tax liabilities.  *See* Exhibit B at 13:8-14:2.

52.     The Separation Agreement was entered into approximately thirteen (13) months prior to Petition Date, and effectively resulted in the Debtor relinquishing to Christina Raccuia several assets of value that might otherwise be made available to the Debtor's creditors.

**D.      Vehicles**

53.     As recently as 2015, the Debtor owned or possessed a 2011 Mercedes GL550, a 2014 Mercedes G550, a 2012 Bentley Flying Spur, and a 2015 Jeep Cherokee (collectively, the "Vehicles".  Copies of the vehicle summary pages for the 2015 insurance policy (the "Auto Policy") for the vehicles is attached as Exhibit P.

54.     The cumulative value of the Vehicles stated in the Auto Policy was $437,232.00.  *See* Exhibit P.

55.     Among the Vehicles, only the 2015 Jeep Cherokee is listed in the Debtor's petition, and the Debtor's interest in and disposition of the other three vehicles is unclear.  *See* Exhibit C at Schedule B.

56.     The Debtor's address listed in the Auto Policy, the other insurance policies referenced herein, and several other policies produced to the Trustee by third parties, list the Debtor's address as c/o of H&T, 70A Greenwich Avenue, Suite 101, New York, New York ("70A Greenwich").

57.    A Change Endorsement form dated April 15, 2015 with respect to an umbrella policy in the Debtor's name, updated the Debtor's "primary residence" from 113 Bedford to 70A Greenwich.  A copy of the Change Endorsement form is attached as Exhibit Q.

58.    The Debtor testified at the Rule 2004 Exam that 70A Greenwich is a "drop box," though it remains unclear why the address is listed as the Debtor's "primary residence" in the insurance policies.  *See* Exhibit B at 26:8-16.

**E.    Other Issues**

59.    The Debtor's 2014 Federal tax return included a Supplemental Income and Loss form indicating that $120,000.00 in rent was received for 113 Bedford in 2014.  A copy of the Supplemental Income and Loss form is attached as Exhibit R.

60.    At the Rule 2004 Exam, the Debtor testified that he had not received any rental income from any property during the previous ten (10) years.  *See* Exhibit B at 27:14-19.

61.    On or about December 22, 2015, less than two months prior to the Petition Date, a deposit of $27,855.00 (the "Hirsch Proceeds") was made into the Debtor's account at Chase ending in 9088.  A copy of the relevant page from the account statement is attached as Exhibit S.

62.    At the Rule 2004 Exam, the Debtor testified that the Hirsch Deposit constituted the net settlement proceeds received from Christian Hirsch under a December 2015 settlement agreement resolving litigation between H&T and Christian Hirsch and his medical practice.  *See* Exhibit B at 133:2-25.[1]

63.    The Debtor has been unable to fully explain and document the disposition of the Hirsch Proceeds.

---

[1] The actual settlement agreement between the Debtor and Christian Hirsch is subject to a confidentiality provision, and the Trustee can make it available to the Court for *in camera* inspection.

64.    Records provided by the Debtor with the Rule 2004 Responses indicate that he received and repaid various loans to family members, including Christina Raccuia and his sister, totaling several thousand dollars during at least the two years prior to the Petition Date.

65.    The Debtor has not fully explained the purpose of the loans referenced in the previous paragraph or accounted for the disposition of the loan proceeds.

66.    Between June 13, 2014, and December 23, 2015, the Debtor transferred at least $31,640.85 into an irrevocable trust called the "Joseph R. Raccuia Irrevocable Trust," for which Angelo Natoli is the trustee.

67.    At the Rule 2004 Exam, the Debtor testified that he only "vaguely" recalled creating a trust, did not "even know – remember what it's about," and did not recall transferring any assets into it.  *See* Exhibit B at 33:5-34:13.

68.    On October 28, 2015, the Debtor transferred $30,000.00 from his checking account at Chase ending in 9088 to H&T's checking account at Chase ending in 5241.  A copy of the relevant page of the Debtor's Chase account statement is attached as Exhibit T.

69.    At the Rule 2004 Exam, the Debtor was unable to explain why $30,000.00 would be transferred to H&T a year after it ceased operating.  *See* Exhibit B at 115:6-10 and 116:9-24.

70.    A spreadsheet provided by the Debtor with the Rule 2004 Responses indicates that at least $213,826.67 in accounts receivable purportedly due to JSR has been collected since the Petition Date.  A copy of the spreadsheet is attached as Exhibit U.

71.    The disposition of the receivables collected by JSR, both before and after the Petition Date, remains unaccounted.

72.    Given the Debtor's repeated assertion during the Rule 2004 Exam that his accountant, Angelo Natoli, would be able to explain the various issues with the financial dealings

of the Debtor and his businesses, subpoenas pursuant to Federal Rule of Bankruptcy Procedure 2004 were served on MedPro, Angelo Natoli, and Angelo Natoli as trustee for the Joseph R. Raccuia Trust, on October 21, 2016, October 24, 2016, and November 4, 2016, respectively.

73.    Angelo Natoli has not directly responded to any of the subpoenas referenced in the prior paragraph, and much of the requested information remains outstanding and is presently the subject of a pending motion to compel [bankruptcy docket no. 50].

## <u>COUNT ONE</u>
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2)(B))

74.    Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

75.    Upon the Debtor's bankruptcy filing, his interest as sole shareholder in his business entities, including H&T and JSR, became property of the estate, and the Trustee has the exclusive authority to manage the entities and their assets, including collecting, selling, or otherwise liquidating accounts receivable, the proceeds of which would inure to the benefit of the bankruptcy estate through its interest in H&T.

76.    In collecting and potentially diminishing accounts receivable due to H&T after the Petition Date totaling at least $152,887.00, and by failing to disclose the collection of said receivables for several months despite repeated requests from the Trustee, the Debtor, with intent to hinder, delay, or defraud a creditor, namely Gordian, which holds a security interest in the receivables, as well as the Trustee, has or has permitted to be transferred, removed, destroyed, mutilated, or concealed potential estate property since the Petition Date.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

A.    Denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B);

B.    Awarding attorneys' fees and costs; and

C.      For such other and further relief as the Court deems just and proper.

## COUNT TWO
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3))

77.      Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

78.      As set forth above, the Debtor has failed to provide records and accountings for a plethora of transactions and assets, and, by his own testimony at the Rule 2004 Exam, the Debtor failed to keep books and records for his personal and business financial dealings.

79.      Most notably, despite repeated requests to the Debtor as well as three (3) subpoenas to the Debtor's accountant, Angelo Natoli, the Debtor has failed to provide full accountings for (i) the receivables due to H&T on the Petition Date; (ii) the receivables paid to H&T since January 1, 2015; and (iii) the disposition of the receivables paid to H&T since January 1, 2015, including during the ten (10) months since the Petition Date.

80.      Of additional note, the Debtor has not provided any records to explain the dramatic reduction of his income ($32,500.00) reported in his amended Schedule I.

81.      The Debtor also has not provided any records or accountings for the Joseph S. Raccuia Irrevocable Trust other than the trust document.

82.      Records for the information set forth in the preceding paragraphs should be easily produced, and the fact that the Debtor has been unable to produce such information despite numerous requests over several months strongly indicates that the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, records, and papers, from which the debtor's financial condition or business transactions might be ascertained.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

A.      Denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(3);

B.      Awarding attorneys' fees and costs; and

C.      For such other and further relief as the Court deems just and proper.

## COUNT THREE
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(A))

83.     Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

84.     The valuations for H&T stated in the Debtor's original and amended Schedule B of $0 and $100 are highly inaccurate given that at least $152,887.00 in accounts receivable have been paid to H&T since the Petition Date, and given that the company should not have had any operating expenses in light of the Debtor's testimony that the company ceased operating in October 2014.

85.     The Debtor's Rule 2004 Exam testimony that little to no receivables due to H&T have been collected since the Petition Date, is directly contradicted by the fact that at least $152,887.00 has been paid on account of H&T receivables since the Petition Date, with at least $114,100.00 deposited into the Debtor's bank account.

86.     Schedule B of the Debtor's petition valued his personal and household items at $3,000.00, including goods and furnishings valued at $1,000.00, yet the Separation Agreement provided that all furniture and household furnishings of the Residence belong to the Debtor and the 2015 homeowners' insurance policy for the Residence valued the contents of the residence at $794,000.00.

87.     The Debtor testified at the Rule 2004 Exam that he did not receive any rental income from 113 Bedford during the prior ten (10) years, however, the Debtor's 2014 Federal

tax returns indicate that $120,000.00 in rent was collected in connection with 113 Bedford during 2014.

88.    The Debtor also testified at the Rule 2004 Exam that he had little knowledge of the Joseph R. Raccuia Irrevocable Trust and did not recall transferring any assets into it, but records indicate that he transferred at least $31,640.85, a not insignificant sum, to the Trust between June 13, 2014 and December 23, 2015.

89.    The foregoing strongly indicates that the Debtor knowingly and fraudulently in connection with his bankruptcy case made a false oath or account, if not several false oaths or accounts.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

A.    Denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

B.    Awarding attorneys' fees and costs; and

C.    For such other and further relief as the Court deems just and proper.

## COUNT FOUR
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)(D))

90.    Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

91.    In failing to provide full accountings for H&T's receivables despite numerous requests from the Trustee, as well as an accounting for the Joseph S. Raccuia Irrevocable Trust, among other items detailed above, the Debtor knowingly and fraudulently in connection with his bankruptcy case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

A.      Denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(D);

B.      Awarding attorneys' fees and costs; and

C.      For such other and further relief as the Court deems just and proper.

## COUNT FIVE
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5))

92.      Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

93.      The debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.  In particular, the Debtor has failed to satisfactorily explain or provide:

a.      The amount of H&T's accounts receivable due on the Petition Date and the disposition of all receivables collected since January 1, 2015.

b.      The $0 and $100.00 valuations for H&T stated in the Debtor's schedules and amended schedules.

c.      The ostensible use of H&T's bank account for purchases that appear to be personal in nature long after H&T ceased operating.

d.      The dramatic reduction in income ($32,500.00) reported in the Debtor's amended Schedule I.

e.      The great disparity in the value of the household furnishings at the Residence stated in Schedule B of the Debtor's petition and the Debtor's 2015 homeowners' insurance policy.

f.      A full explanation for the purpose of the Joseph S. Raccuia Irrevocable Trust and an accounting for the funds transferred by the Debtor to the trust

g.      The disposition of the 2011 Mercedes GL550, a 2014 Mercedes G550, a 2012 Bentley Flying Spur covered under the Debtor's 2015 automobile insurance policy.

h.      An accounting for any inheritance received by the Debtor from the estate of his father prior to May 29, 2015.

i.      An accounting for the disposition of the Hirsch Proceeds, which were received by the Debtor less than two (2) months prior to the Petition Date.

j.      The purpose of the $30,000.00 transfer by the Debtor to H&T on October 28, 2015, which occurred a year after H&T ceased operating.

k.      The purpose and disposition of various loans the Debtor received from Christina Raccuia and his sister.

l.      An accounting for the disposition of any fine art, jewelry, or furnishings that were at 113 Bedford that were transferred to Christina Raccuia or otherwise dispossessed by the Debtor.

m.      Whether 70A Greenwich serves or recently served as the Debtor's primary residence as stated in the Debtor's insurance policies.

n.      An explanation for why the Debtor testified that he has not received any rental income over the last ten (10) years despite the disclosure of $120,000.00 in rental income in his 2014 Federal tax returns.

o.      An accounting for the disposition of receivables collected related to services provided by JSR.

p.      Why the Debtor determined to relinquish several seemingly valuable assets to Christina Raccuia in connection with their divorce, rather than address

debts to his creditors, which the Debtor testified, were at least in part incurred because of Christina Raccuia.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

      A.     Denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5);

      B.     Awarding attorneys' fees and costs; and

      C.     For such other and further relief as the Court deems just and proper.

## COUNT SIX
### (Conversion)

94.    Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

95.    As noted above, upon the Debtor's bankruptcy filing, the Debtor's interest as the sole shareholder of H&T became property of the bankruptcy estate, and fell under the exclusive control of the Trustee.

96.    To the extent that H&T was due receivables on the Petition Date, the Trustee, had exclusive authority to determine how the receivables were to be managed, including collecting, selling, or otherwise liquidating the receivables for the benefit of the bankruptcy estate's interest in H&T.

97.    In collecting H&T's receivables and depositing them into his personal bank account, or otherwise using the receivables and H&T's bank account on personal expenses, all while the Debtor failed to disclose and downplayed the extent of the receivables, the Debtor wrongfully converted assets of H&T for his personal benefit, thereby wrongfully diminishing and obscuring the estate's interest in H&T and the Trustee's ability to liquidate assets of H&T for the benefit of the estate.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

      A.      Awarding actual, compensatory, consequential, and punitive damages, plus interest, for the Debtor's conversion of H&T's accounts receivable;

      B.      Awarding attorneys' fees and costs; and

      C.      For such other and further relief as the Court deems just and proper.

## COUNT SEVEN
### (Unjust Enrichment)

98.    Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

99.    In failing to disclose H&T's accounts receivables as well as the true value of H&T, and then collecting and using H&T's accounts receivables and its bank account for his personal benefit, thereby diminishing and obscuring the estate's interest in H&T, the Debtor has been unjustly enriched at the expense of his creditors.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

      A.      Awarding actual, compensatory, consequential, and punitive damages, plus interest;

      B.      Awarding attorneys' fees and costs; and

      C.      For such other and further relief as the Court deems just and proper.

## COUNT EIGHT
### (Constructive Trust)

100.    Plaintiff repeats each and every allegation set forth above as if same were fully set forth herein.

101.    As set forth above, the Debtor wrongfully misappropriated the accounts receivable of H&T for his personal benefit, and has failed to fully account for the scope of the accounts receivable and the disposition of the amounts collected, thereby harming the estate by diminishing and obscuring its interest in H&T.

102.    Given the Debtor's conduct and the potential for further diminution of H&T's

receivables, it is clear that a safeguard is needed to ensure the estate's interest in H&T.

WHEREFORE, the Trustee demands judgment against the Debtor as follows:

A.    Imposing a constructive trust in favor of the Debtor's estate on H&T's receivables, as well as all amounts the Debtor has collected or utilized traceable to H&T's receivables since at least the Petition Date;

B.    Awarding attorneys' fees and costs; and

C.    For such other and further relief as the Court deems just and proper.


FOX ROTHSCHILD LLP
Attorneys' for Catherine E. Youngman
Chapter 7 Trustee/Plaintiff


By:/s/Michael R. Herz
Michael R. Herz (MH-5889)

Dated:  December 9, 2016

## <u>VERIFICATION</u>

I hereby verify that the foregoing statements are true to the best of my knowledge and belief.  I am aware that if any of the foregoing statements made are willfully false, I am subject to punishment.


By:     */s/Catherine E. Youngman*_____
Catherine E. Youngman

Dated:  December 9, 2016